Good morning everyone, welcome. And before we begin this morning, let me announce for the courtroom that Judge Rovner is with us. Thanks to the Miracles of Modern Technology, counsel will be able to see her from the podium on the little video conferencing device. But please do account for a slight pause with the transition, so please be alert to that so that the Alright, with that, we'll call our first case this morning, which is CNH Industrial America v. Jones Lang LaSalle, case number 163800. Ms. Houston? May it please the Court, this is a contract case that was tried to the bench in the Eastern District of Wisconsin, and judgment was entered on behalf of CNH. There are two issues that I would like to focus the Court's attention on this morning, and the first is procedural, it's whether there's diversity jurisdiction, and the section 26 little i of the limitation of liability provision in the contract exclusively applies to limit CNH's recovery. Now on behalf of JLL, we are asking that judgment be vacated and the case dismissed for lack of diversity jurisdiction, or if the Court finds... Why wouldn't we have supplemental jurisdiction over the dealers as pendant parties under section 1367A and our decision in Stromberg? Why wouldn't we have that? That's a good question, Your Honor, and there's a very simple answer to that. We are dealing with the dealers are, they go to original jurisdiction, not pendant party, because there's one contract here, and all the rights are together. In Stromberg, well, in Greedy, for example, the investors had an independent basis to bring their claims. In this instance, we have one claim. It's pleaded and proved as one claim. There's only one liability claim here, it's the contract, and CNH and its dealers are the And so when you're dealing with original jurisdiction rather than permissive party, then you have to look at the citizenship of the dealers. You're not looking at Stromberg at all, it seems to me. The dealer's own claims against JLL arose out of the same facts in the same contract on which CNH is suing, so there was no need for CNH to collude with the dealers by taking assignments of their claims. And in the brief, your only response is to suggest that original jurisdiction over the case was missing in the first instance, but I don't see why that's true. There clearly is diversity jurisdiction over CNH's claim against JLL, seems to me. So, you know, and were there, if there was some sort of a problem with collusion, you know, the dealer's claims could always be removed from the case in order to cure any jurisdictional problem. So, you know, I mean, I think Stromberg takes care of your argument. Your Honor, with due respect, I... Which by the way, oh, when a lawyer says with due respect, the end is near, but okay. So, this is the first time, by the way, on appeal that it seems to me you're even suggesting this argument. Am I wrong there too? Which argument? That you're bringing up the jurisdictional argument. Jurisdiction is being raised for the first time on appeal, that is true. Right, okay. So... Okay, go ahead. Okay, so let's back up. We admit that CNH is diverse and has an interest in the court has held in Hartford accident. Assignments designed to confer diversity jurisdiction normally for purposes of facilitating the debt are collusive and ineffective. And the reason that applies in this case and what distinguishes this case is CNH is not here trying to recover for itself. CNH is trying to multiple claims with multiple parties. But the damages are in separate baskets. The damages can be separately calculated, but here's the trick. You can't separately calc... You can't... The liability is one. There's one liability claim here. There's not multiple liability claims here. Right, but there's different categories of damages. Those that were incurred by the dealers. There are... Consequential damages. There are... There are damages for the signs. And we can count up the various signs, but that doesn't change that there's just one cause of action here. The liability is the breach of contract that... Well, right, but CNH has over four million dollars in damages to itself. The dealers claims are just over a million and the 16 of the first represents such a tiny fraction of the overall damages. Well, we don't... Even the dealer's damages that... I mean, why would... Why would anybody collude? Well, first of all, we don't know because the citizenship of the dealers was never put on the table at any time. And it still isn't there. Well, because the issue wasn't raised. The issue actually was raised and it was raised at the very start of the case. CNH filed its complaint. It had one sentence in there. And we're also going to be recovering on behalf of the dealers. But they didn't say who the dealers were. Nobody knew who the dealers were. And so what JLL did was they put that at issue immediately by denying... They lacked sufficient information because they didn't know what pool of dealers was going to be included in this claim. And as soon as you do that under Rule 8, that constitutes a denial. And what that does is it requires CNH to prove up diversity jurisdiction at trial, which CNH never did. CNH is the party who has the obligation here to establish jurisdiction in the first instance. And trying to put it back on the defendant is not an excuse. So what you look at when you have these assignments is you have to look and see who are the real substantial parties here. Because if the dealers, which I think the court just acknowledged they are real and substantial, because they have a direct stake in the outcome. And this is something that I think is determinative here because even though there was an assignment, the assignment had no economic substance. Because before the assignment, the dealers had a right to get their signs fixed. But they had to look to JLL to get the signs fixed. After the assignment, they still have their right to get the signs fixed. They just have to look to CNH. So in substance, nothing has changed. Now... Well, this is a way of efficiently aggregating the non-collusive reason for the assignment under Greedy. Well, if that... No, and I would like to address Greedy, but if that were the rationale, just simply efficiency, well then Kramer is incorrect. Because that was efficient. Countless times you can assign to make it efficient. And that doesn't mean we can ignore the citizenship of the parties who are really going to recover. The point of this rule and the doctrine under it is to preclude the manufacturing of diversity jurisdiction. This case was going to be in federal court no matter what. And the 16 of the hundreds of dealers, their claims, because those dealers are non-diverse, it's not the thing that's driving this because the litigation against Arlon in California, they knew to... They brought that first. They brought it in state court. Now don't you think if there was federal jurisdiction, that's Arlon's backyard. Why would you bring the claims? Why would you bring your case against Arlon in state court instead of federal court if you thought you had jurisdiction? Then you come back here to Wisconsin where you could have home court advantage and you go into federal court. There's something funny going on here. And I think it's because it should have been filed in state court from the get-go. And it doesn't matter if there are only 16. There could be one party. The rule is one non-diverse plaintiff contaminates the jurisdiction. And... I don't think you have carefully read section 1367A, which provides that the court shall have supplemental jurisdiction over a claim that is so closely related to a claim over which the court has original jurisdiction is to constitute part of the same case or controversy, even if this claim involves the joinder or intervention of additional parties. But I have to tell you, Ms. Housen, I think you should go on to your next point. Okay, I will quickly address... We're really beating a dead horse here. Okay, I do agree with how you read section 1367A, but I would argue that 1367B makes an exception for an indispensable party. And these dealers are indispensable. And as soon as they become indispensable, then you don't have supplemental jurisdiction. And with that, I will move on to the other point that I was hoping to address, which is the limitation of liability. And the limitation of liability was put in the case, was put in the contract to limit JLL's outside exposure. And section 26 divides the claims into two separate and additional service providers, which is our case and would include Arlon and the sign manufacturers. And the other is all other cases. Now, Ms. Housen, why isn't your argument as to section 26 and the limit on JLL's liability waived? It's true. It's absolutely true that Judge Stadtmiller referenced section 26 in his ruling. But if you didn't argue below for the particular interpretation of section 26 that you are, you know, espousing now, that you're pursuing on appeal, isn't it too late in the day? It isn't, because this is a purely legal question. It's a matter of contract interpretation. And this court in Hively said, if there's a pure legal question that we can, that's a question of law, the court has discretion to entertain it. And I think what we're trying to do here is to achieve the right end result. And if the court can do that by properly interpreting the contract, I think they should. Also, I would add that counsel at the very end of his closing argument, before he sat down, opened the door on this, requesting relief under both, because I couldn't figure out where was the court getting, coming from with this, because there wasn't argument. But I realized at the very end, going through the transcript, that counsel had requested both items at the very end. And so they've opened the door. This is a legal issue. And it clearly bears on the proper result here. So I don't think the court should just close its eyes to it. Well, my thought has been that given the very nature of Section 26, the limitation on liability, both parties were surely on notice that Section 26 would come into play if JLL were found liable for breach of contract. So it was incumbent upon JLL to alert the court as to how Section 26 should be applied. For me, it's a problem. Well, I hope Your Honor can take a look at the contract, because I think what you want to do is properly interpret it. And I don't think you can do that under these circumstances if you just ignore it. And so I would suggest that the problem stems from the word and between the first subsection and the second. It's not used in an additive capacity. It's used to say this world of claims and that world of claims. If you fall in this world of claims, there are going to be one remedy. And it's important to think of what I'd like to point out that I think is persuasive. And I can't see. The white light is not on, correct? Okay. What's important here is it doesn't leave C&H without a remedy. C&H should be able to recover against Arlon, because Arlon was the wrongdoer here. And JLL never was supposed to be held liable. The court needs to give effect to the intent of the contract. As the was never to make JLL a guarantor. And you know two reasons you know that. One, if you look at the text of 26 little I. And the other is if you look at the whole context. If you look at the structure of the contract, section 9A says it talks about JLL's liability. And it has an exquisite exclusion in there. It says, however, JLL, if it arises from the any claim arising from the additional service providers, JLL will not be held liable for those. And that's what's happening here. The light is on. And I'd be happy to address any additional questions on rebuttal. Thank you. Thank you. Mr. Murphy. May it please the court, I will not beat the dead horse of jurisdiction unless the court has any questions for me on any of that. Of course I do. Ready. On the jurisdictional point, how would we separate out the dealer's claims from the judgment if we were to conclude the problem with collusion here? The court could sever each of the dealer's claims, for that matter, all dealer claims, whether diverse or non-diverse dealers, without affecting the judgment whatsoever. CNH's damages alone on claims for signs that it owns are $4.4 million. The judgment is $3 million. So were the courts to choose to sever, it wouldn't impact the judgment. The procedural device would be through Rule 21. In its briefs, JLL argued that Rule 21 doesn't apply here because it speaks to adding and dropping parties. That overlooks the last sentence of Rule 21, which speaks to severing claims against parties. That's the provision that would apply here. We're not talking about claims against parties. We're talking about claims by parties. The assignments are valid. So CNH is always going to be pursuing the assigned claims. If the court were to sever under Rule 21, it would sever claims against JLL that are pursuant to assignments by non-diverse dealers from those that are pursuant to assignments by diverse dealers and those that CNH is pursuing in its own right. As to the former category, the court could dismiss them, proceed on the second category and affirm the judgment without changing the monetary amount whatsoever. As to the merits, JLL's appeal turns on a mischaracterization of the claims that proceeded to trial. It argues that CNH sued JLL because of something Arlon did. That's just not the case. CNH sued and prevailed at trial on claims based on JLL's breaches of the contract. CNH measured its damages as the cost to replace defective signs, not because it was suing JLL for Arlon's mistakes, but because it was suing JLL rather than Arlon. Let me start again. CNH measured its damages as the cost to replace defective signs because it had hired JLL to perform certain duties that had JLL performed, CNH would not be sitting on hundreds of defective signs. JLL acknowledged this true nature of CNH's claim in arguing at trial, as the court is aware, that CNH's claim falls within the limitation of liability that applies to cases other than for performance by additional service providers. It seeks to avoid that admission now on appeal and it cannot do so, partially because it's weighed, but also because it was right. CNH did sue JLL for something other than the performance of additional service providers. It sued JLL because JLL had breached the contract by failing to perform services that were intended to prevent the very type of damages that CNH suffered here. Well, Arlon is not an additional service provider within the meaning of the contract anyway. True. As I understand, that would be the sign manufacturers who in turn subcontracted with Arlon as the material supplier. Correct. So even if this sub one is in play, it's not applicable here. The only way it's applicable is as to JLL's own claims against the sign manufacturers, which were part of the suit at the outset by way of third party claims, which were referred to arbitration. But as to CNH's claims against JLL, you're absolutely right, Your Honor. This was a contract for professional services, not manufacturing of signs. Exactly. Project management services specifically. Yes. We didn't get there earlier, but what is CNH's understanding as to what the essential terms of Arlon's warranty were? Do you agree it was seven years? That's being litigated in California, Your Honor. What I know is that JLL told CNH three different things at three different times. It was not, I don't believe, an essential element of our claim against JLL in this trial that we prove the actual terms of Arlon's warranty. It is sufficient, and the district court found this to be the case, to prove that JLL did not disclose accurately and consistently what those terms should be, or what those terms are, rather. So you're not comfortable responding as to the seven years, or what? No, I certainly believe that that's the case, Your Honor, but that was not an element that was necessary to prove the claims at trial. Arlon disputes that, is I guess what I'm trying to say, and that dispute didn't need to be resolved to prove that JLL had breached its contractual obligations to CNH. JLL's obligations to CNH included negotiating the best possible warranty for the family of signs, disclosing all elements of the warranty, providing ongoing project management services for the warranty, and researching and documenting the warranty. It didn't do those things regardless of what the warranty terms, in fact, are. And quality control. And quality control. I was focusing on the warranty obligations, but you're right. And the district judge's findings of fact covered all of those contract breaches. I don't think there was one that he found was unsubstantiated. Correct. He found that JLL had breached all of those obligations, any one of which was a substantial factor in the JLL, as asserted here, but they would have had to have proved that CNH waived each of those obligations or accepted each of their defective performances because any one of them is sufficient, each of them alone caused CNH to suffer the damages at issue. And the district court's findings are not clearly erroneous. I think at this point, Your Honor, unless the court has further questions for me, I would ask that the judgment be affirmed. Yes. No. I said peace. Thank you. Thank you. Ms. I do have a couple very specific rebuttal points that were just raised. One is that you talked about $4.4 million. And I did a little math this morning on the way over here, and the cost of the family of signs for each dealership is $11,890 based on the stipulation, and the dealers paid $10,500. And they struck a deal that they were going to own two out of the five signs, and the dealers would own three out of the five signs. And if you do the math, that means the dealers really have more like $3 million at stake, and CNH has a lot less. So I'll just put that out there for you to think about on that one. But counsel made a really important point, and that was, he said, even though in his brief at page two, he says that the problem was the defective vinyl, and what CNH wanted, it's the second to the last paragraph, first sentence, and then the following paragraph, first sentence on page two of his brief, he says, and CNH wanted the signs. They were always going after the signs. And, Your Honor, you pointed out that this is a service contract, and you're right. And the contract provides what service damages CNH can recover. And CNH drafted this contract, and you know what it says. It's section three. It says you get refunded only for that portion of the services that are deemed defective, that you paid, for the services that you paid. They never put in any proof on those contract damages, and those are the damages. They didn't prove those. The district court didn't find or award those damages. What happened here is you have a specific remedy in the contract, and nobody paid any attention to it. You have a second contract, the manufacturing contract, and what the district court did was they awarded damages from the manufacturing contract. That can't possibly be right. You pointed out there's a difference here. This is the service contract, and then you have to follow section three to recover those damages. And with respect to waiver, the district court never ruled on the contractual waiver argument. The district court ruled on the waiver by conduct, but the contract provides you have to give written notification and you have to give an opportunity to cure. That's common practice. That's good practice. That's what business people decide they want to do, because they want to keep the contract moving forward. This is the deliverables argument? Yes, this is a deliverable. All the services. And the judge was clearly wrestling with that term. He didn't even look at the contract. It's defined in the contract. This is an integrated contract, and with an integration clause, he went outside of that and looked at pre-contract negotiations, and then tried to bring that in here to define this, when the definition of deliverables is right in the contract itself. The court can't do that. The court was bound by the terms of the contract. But there were multiple breaches here, not all of which are tied to deliverables. In my opinion, they are, Your Honor, because the deliverables are services. If Your Honor is thinking, the sign, that's not a deliverable under this contract. That's a deliverable under the manufacturer's contract. This is a service contract. Every service here is a deliverable. They don't have some one tangible object. This isn't a manufacturing contract. It's a service contract. The services, as you are providing them, are the deliverables. There isn't a tangible item like the sign. That's from the manufacturing contract. Well, the judge also held, as I read the opinion, that there was no awareness that these services were faulty in order to reject it. Let me address that, because my time is short. CNH was intimately involved in negotiating those contracts for the additional service providers. This was their pet project from Italy, and the guy came over from Italy, and they sat down, and they went through, and they told us to decrease the warranty from three years, which was the normal warranty period, to one year. They were intimately involved in this. They were provided the warranty when the sign manufacturing contract was tendered, was executed, and then they gave it. I'm sorry Your Honor, I'm out of time. Thank you. Our thanks to both the counsel. Oh, I'm sorry. Judge Rovner? I was just going to ask, whose obligation was it under the contract to actually negotiate the contracts, including warranties, document the arrangements, oversee the installations, and deal with any problems that emerged? You just combined some of JLL's obligations and some of CNH's. CNH, if you read through the contract, they retained control and approval, and they were involved in those initial contracts. Now with respect to overseeing the overall project, of course that was JLL. Thank you. All right. Thank you. And our thanks to both counsel, all counsel, the cases taken under advisement.